# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 3, 2008

## STATE OF TENNESSEE v. JOHNNY B. COX

**Appeal from the Circuit Court for Madison County**
**No. 07-240     Donald H. Allen, Judge**

_____

**No. W2007-02430-CCA-R3-CD  - Filed July 10, 2008**

_____

The defendant, Johnny B. Cox, was convicted by a Madison County Circuit Court jury of two counts of assault, a Class A misdemeanor.  He was sentenced to the maximum sentence of eleven months and twenty-nine days for each count, to be served consecutively, with his release eligibility set at seventy-five percent.  The defendant was ordered to pay a fine of $2500 for the first count and a fine of $500 for the second count.  In this appeal, the defendant raises the issue of whether the evidence was sufficient to support his convictions.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

George Morton Googe, District Public Defender, and Gregory D. Gookin, Assistant Public Defender, for the appellant, Johnny B. Cox.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun Alan Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's altercation with Bobby Humble and William Humble in the parking lot of the Pay-Less Motel in Jackson, Tennessee.  The defendant, Johnny B. Cox, was originally charged with two counts of aggravated assault, a Class C felony, but was found guilty on two counts of the lesser charge of misdemeanor assault.

At the trial, Bobby Humble testified that on the evening of December 21, 2006, he was at the Pay-Less Motel in Jackson, Tennessee where he both lived and worked.  He said the motel's manager told him that the defendant was not supposed to be on the property at that time.  He said that when he saw the defendant on the property that day, he and his son, William Humble,

approached the defendant and asked him to leave the property. He said that there were four or five other people with the defendant and that he told the defendant that there was not going to be any fighting. He said that when he turned his back on the defendant, "the lights went out" and he was evidently knocked unconscious. He said he did not remember anything else until he was at the hospital. He said he stayed at the hospital for three days. He stated that he had a brain injury and that the medical bills were about $8,000. He said that he still got dizzy from his injuries. He said that he and William had been getting ready to drink before the incident but that they had not yet had anything to drink.

William Humble testified that he was also living and working at the Pay-Less Motel in Jackson, Tennessee, on December 21, 2006. He said that the motel manager had asked him and his father to make sure that people who were not supposed to be there left the property. He said that when he and his father saw the defendant on the property, they approached him and asked him to leave because he was not supposed to be there. He said that the defendant repeatedly asked them why he had to leave the property. He said that after turning around he felt something hit the side of his face near his eye and that he "went down." He said that was all he remembered. He said that when he got up, he saw his father lying on the ground and went over to lie on top of him. He said that after a short time passed, he got up and went to his mother's room to get help. He said that it felt like he had been hit by a bottle and that he had seen the defendant drinking beer from a bottle before he was hit. He said that his eye was swollen, that his nose was bleeding, and that he went to the hospital where he was treated and released for his injuries. He said his medical bills were about $450.

William Humble testified that his father was taken to the hospital in an ambulance. He said that his father's eye "was really messed up" and that there was a knot on the back of his father's head the size of a golf ball that was bleeding. He said that neither he nor his father had anything in their hands when they approached the defendant that night. He said neither he nor his father ever struck the defendant that night.

On cross-examination, William admitted that he and his father had been drinking prior to the incident and had each had about six beers in the four hours before the incident. He said that he did not have any permanent damage from being hit in the head.

Ronald Stoots testified that he was living at the Pay-Less Motel when the incident occurred. He said that he knew both Bobby Humble and William Humble were the maintenance men at the motel. He said he was home on the night of December 21, 2006, and saw what happened to the victims. He said he opened his room door and heard some loud voices and saw the victims speaking with the defendant. He testified that he heard Bobby say, "There's not going to be any trouble. There's not going to be any fight out here. Ya'll people have to leave." He said that the defendant struck Bobby in the head with a beer bottle and Bobby fell to the ground. He said that the defendant then struck William in the head with the same beer bottle, breaking it, and that William fell to the ground. He said that the defendant and another man began to kick both Bobby and William while they were on the ground. He said he grabbed his robe and walked toward them, telling them that was enough. He said the men stopped kicking the victims and walked off. He said that a girl who was with the defendant started her car, the defendant got in, and they drove off.

Stoots testified that he called 9-1-1 because Bobby was not responding to him. He said that Bobby's face was bloody. He said that William had a gash on his head near his eye. He said that William did not move for ten or twelve minutes. He testified that neither Bobby nor William had anything in their hands before the incident. He said he knew the defendant was not supposed to be on the property at the time of the incident because he had been in the office when the motel manager told Bobby and William not to let the defendant on the property. He said that William did not get up and walk around before the ambulance and police arrived.

Moniqua Helms testified for the defense that the defendant was her uncle and that she was at the Pay-Less Motel the night of the incident. She stated that she went there to visit the defendant who had just gotten out of jail. She said that a man approached the defendant and that the defendant asked the man why he had let people go into the defendant's apartment and steal his things when the defendant had been arrested there three or four nights earlier. She said that a smaller man with glasses approached the defendant, as well. She said that the first man said they had not let anyone take the defendant's things and that the second man started cussing. She said that the first man hit the defendant. She said that she pulled her car away before the men got on it. On cross-examination, she testified that she got out of her car after moving it because she was nervous. She said she got back into her car and left. She said that she could not hear what William Humble said to the defendant when he approached them. She said that several people, about fifteen, rushed up and that she could no longer see the defendant or either of the victims. She said that she left and did not return to pick up the defendant.

The defendant did not testify. The jury found the defendant guilty of assaulting Bobby Humble and guilty of assaulting William Humble.

The defendant challenges the sufficiency of the convicting evidence. He argues that the victims' testimony was inconsistent, with each other and with the testimony of Ronald Stoots. He notes that Bobby testified that he and William had not been drinking, while William testified that they had consumed a twelve pack of beer in the four-hour period before the incident. He also states that William testified he left his father to have his mother call for medical assistance but that Stoots testified William never got up until the ambulance arrived. The state counters that the testimony sufficiently establishes that the defendant brutally attacked the two victims with a beer bottle and caused bodily injuries to both.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). We do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

The defendant was convicted of two counts of assault, which is when a person "[i]ntentionally, knowingly or recklessly causes bodily injury to another." T.C.A. § 39-13-101(a)(1). In the light most favorable to the state, the evidence shows that the defendant hit both victims with a beer bottle in the back of the head causing bodily injury. The defendant's argument that the victims' testimony was inconsistent invites us to reweigh the evidence and draw our own conclusions. This is the province of the jury, which we may not invade upon appellate review. See Sheffield, 676 S.W.2d at 547; Cabbage, 571 S.W.2d at 835. The evidence is sufficient to support the defendant's assault convictions.

Based on the foregoing and the record as a whole, we conclude that the evidence is sufficient to support the defendant's convictions of assault. We affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE